Good morning. May it please the Court, my name is Carla Crafts. I'm representing the petitioner Alejandro Villa-Anguiano. There are certain facts that have been conceded in this case and I want to cover those quickly. Mr. Villa-Anguiano was a legal permanent resident. In 1997 he was deported from the United States. That deportation order violated his due process rights. He was eligible for relief in 1997 under 212C and 212H. Later, in 2008, when he was arrested at a traffic stop, he was sent to 1326 criminal proceedings. District Court Judge William Cays ruled that there was a deprivation of due process and prejudice during his 1997 deportation hearing. After he was released from criminal custody, when 1326 charges were dismissed, ICE immediately reinstated the deportation order and removed him to Mexico. ICE did not consider this order when reinstating his deportation order. Counsel, is it your position that as a result of the District Court's ruling, he is no longer under an order of removal? It is not my position that the District Court vacated his deportation order. That is true. Okay, so he still stands facing a reinstated order of removal. He has no right to remain in the United States is essentially what I'm asking. He may have a right to remain in the United States if the ICE officer had considered the criminal judge's order showing there is deficiency and infirmity in the 1997... effectiveness or validity of the 1997 deportation or removal order. I understand that the law states I cannot do that. Well, it doesn't actually entirely, which somewhat... It is hard to understand exactly what your contention is, and I understand Judge Chalmers' problem. Because there are a couple cases in this Court saying that where there's a gross miscarriage of justice, in the reinstatement context, you may be able to deal with the underlying reinstatement order. And I understand that, and I believe that... But you're not claiming that. Yes, I believe that the due process violation should have been considered, and it does not amount to a deportation or removal order that can be reinstated. Isn't his remedy at this point to move to reopen that proceeding, which presumably he would have to do from outside the United States after he had been removed? That would be a remedy if he had been removed, deported within a certain time. His remedy at this point would be what we have done is to appeal the reinstatement order. But he doesn't have any right to stay here. That's what I'm wrestling with. He's not here, is he? He is not. He's out of the country. He's not here. He's in Mexico. So why can't he just file a petition to reopen before the Board and make all of these arguments? Well, the petition would be in front of the immigration judge in El Centro. It would have to be a request for sua sponte reopening. Well, why is that? It couldn't be, well, it may be too late now, but at the time that the district judge's order was made, could that be a changed circumstance that would allow a late reopening? Absolutely. And after the district court judge's order, that would be something we would have done, but he was immediately removed to Mexico. And from Mexico, his ability, obviously he cannot file a habeas petition, and a motion to reopen would probably be fruitless. It seems to me the government's really created its own problem here. Had it simply reinstated the prior order and not gone forward in the criminal proceeding, we wouldn't be talking about this. I mean, it would be done because you can't collaterally attack the order. But by going forward with the criminal proceeding and then having the prior order disemboweled by the district court, it has eviscerated the predicate upon which the removal order takes place. And so then you do get to the question of whether or not this was a manifest injustice. Is that your position? It is my position. I feel it is a manifest injustice, a gross miscarriage of justice, and a violation of due process. So under the circumstance, I mean, this is a rare duck, you can see. But it seems to me that what we're really dealing with here is what is the impact of the district court's unchallenged, unappealed order that overturned the prior conviction? Is there an obligation, do you believe, on the part of ICE to keep itself continually informed or failing to do that? The predicate of the order simply doesn't exist anymore. How are you going to characterize this? I do believe that the ICE officer should have been informed. And what happened in this case is ICE prepared the forms before he was sent to criminal proceedings. Once released, they really didn't review anything. In fact, I believe the government doesn't have any right to appeal the dismissal, do they? In other words, he's essentially been, if you will, acquitted for a failure to state a chargeable criminal offense, failure to establish an essential element of proof. So that proceeding goes away, and there isn't any way for the government to challenge the district court's acquittal, is there? Well, there is, because it was a full hearing, and the government didn't dismiss. It was a full hearing. The judge issued an order, and most of our cases are appeals. I was asking another different question, i.e., could the government appeal the dismissal of the indictment? I think it could, but I'm not sure that matters. I think I've seen those cases. Well, those are most of our cases that we have, U.S. v. Lopez. But even in that instance, let me ask you a related question. In light of the Real ID Act of 2005, a district court doesn't have the authority to adjudicate the validity of a removal order that is binding on the agency. That, under the 2005 Act, was reassigned to the Court of Appeals. So if anybody has the authority to do it, we do. And is your position that the government is collaterally stopped as a result of the district court's ruling to contest the validity of the removal order in this proceeding? Well, I don't believe so. I don't think so either, but I'm trying to understand your argument. What is that? At times you seem to be making a procedural argument that says that after the 1326 determination, I should have made a new ruling taking into account the 1326 determination. Is that what you're saying? I'm making two arguments. I'm making arguments that it was a due – well, I cited a Third Circuit case, Ponta Garcia, that I feel is on point, that when there is a due process violation in the original deportation order, it is wrong to continue to use that order. Well, we know that statement you just made we know isn't true. That's your problem here, because the our own bank opinion said, you know, absent this very unusual situation with the 1326, you could not come in and say there was a due process violation in the original removal order. But you apparently could say there was a gross miscarriage of justice in the original removal order. The standard for collaterally attacking in a 1326 is what? Is it something like fundamental deprivation of? Fundamentally unfair. Fundamentally unfair. So is fundamentally unfair the same as gross miscarriage of justice, or is it different? Well, I believe that gross miscarriage of justice would be a higher burden. So you're not – so that – and that – if that were true, then you couldn't have a – it couldn't be a collateral estoppel because the standard is not the same. The standard in criminal court is not as high, or the civil standard is higher in gross miscarriage of justice. So I, again, am having – I mean, although your position has a great deal of intuitive appeal, I'm having difficulty understanding exactly how you get from here to there. So can you help us? Well, I can tell you what probably should have happened, and maybe that's why you haven't seen these cases, is that once released from criminal custody, Mr. Villa, when with ICE, could have been allowed to make a statement, and he could have told them, do you know that the judge issued this order stating the deportation officer that you are going to use? But they could have said, fine, but that has nothing to do with the validity of the reinstatement order because – what is the bank case? Monteiro Esquerdo said that it doesn't matter whether there's a due process violation of the underlying removal order. So goodbye. Well, Morales Esquerdo had to do with the petitioner that had no documents, and no prejudice was shown in the prior in absentia order. Morales Esquerdo passed a hearing and had no documents. So in that case, that gross miscarriage of justice or prejudice wasn't demonstrated. I think you can see we're all struggling with the procedural aspects of this. I mean, the reality is, had the district court issued its order before the first, of course, there never would have been a first removal because that would have undermined it. The very document upon the condition predicate upon which the second removal took place is not valid according to the district court's order. So we have this strange, strange situation. You're arguing that it's a miscarriage of justice, but how do we do this? I mean, do we send this back to the BIA and say, look, we want you to take a look at this again. This doesn't make any sense. Do we have jurisdiction based upon 1252A2D? What do we do with this? I mean, as Judge Berzon pointed out, there's a lot of appeal to this. It's almost like they did what, and yet we're stuck in this procedural never-never land. What is your recommendation? Well, ask the government too, but what is your recommendation about what we do? If we take as a given that the district court's finding, if you will, eviscerated the underlying conviction, what do we do about that to give you a remedy? Are you asking us to do something here? Are you asking us to send it to the district court? Are you asking us to send it to the BIA? What are we doing? Well, he was deported by an immigration judge. So I believe it was a man. Well, the first time, but you're, right? But this proceeding is a direct petition from this non, not from an NIJ or a BIA. So if we send it back to the BIA, we send it. The BIA never did anything. You're appealing from the reinstatement action by an officer of ICE, right? Not from an IJ. In Ponte Garcia, they remanded it to the ICE officer with strong language. But what do we do with the language in our in-bank opinion? And Morales is careful that tells us that the only authority that we have to look at is to ask whether the alien has illegally reentered after having left the country while subject to a removal order. That's the extent of our jurisdiction under our in-bank opinion. It doesn't say that we can reopen the whole proceeding and consider his due process challenge. I wouldn't say it's reopening. I would remand to ICE, the ICE officers, like Ponte Garcia, it's not reopening, and ask them to reconsider the reinstatement. And won't they say exactly what I just said? Very interesting, but this is not validated for our purposes. Well, I believe after reading the criminal court's order and the history of the case with argument that the petitioner can make, it's going to be, I believe, difficult for them to reinstate that deportation order. Tell me why. I mean, in this case, unlike in some others, the district – I mean, one of the problems here is you didn't give us the district court, even the district court's determination, but I did go look at it. And the district court held not only that he was eligible for 212C relief, but that he had been denied a right to counsel. Correct. So why isn't that a gross miscarriage of justice? That is a gross miscarriage of justice, especially since he's a resident with two LPR parents, a U.S. citizen fiancé, and a child here. So you're – although you didn't say it this way, what you're now telling us is that this case should, because of the nature of the vacation by the district judge, should come within the very narrow realm in which there is something more to be done on a reinstatement order. I believe it has to be done, and it's based mainly on the due process concerns. The Constitution does apply to residents and to people in the United States. And how do we square that with the language of Morales-Escurdo? I'm looking at page – let's see – 486F3-498, where we say if Morales, in that case, has a legitimate basis for challenging his prior removal order, which he may have, he will be able to pursue it after he leaves the country, just like every other alien in his position. But Mr. Villa, my client, cannot pursue it from outside of the United States. And I actually – Why not? Why can't he file some sort of an application to reopen? There's nothing he can do. He cannot file a habeas petition. And the only option he would have is to do a motion to reopen subspante, and there's no legal teeth to that motion. It's asking – Okay. You're way, way over time. And it is a somewhat complicated case. We'll give you some time in rebuttal. So thank you. Thank you. May it please the Court, Carol Federighi for the respondent, the Attorney General, Eric Holder. The government lawfully reinstated Mr. Villa's prior removal order and executed that order and removed him again, notwithstanding the outcome of Mr. Villa's criminal proceedings. The district court in his criminal proceedings had no authority to invalidate the removal order for immigration purposes. The district court's authority was limited to determining whether the removal order was sufficient to form a criminal prosecution, to support a criminal prosecution. Why are those different? Well, for one reason – I understand that he informally vacated, but why would it be a – it still seems to be a declaration that this was an invalid removal. The district court – for one thing, the agency was not a party to the district court proceedings. The order is not – the district court doesn't have authority to review, to revamp, to – I understand all that, but it still was a declaration of the invalidity. In other words, to say it's for different purposes suggested there would be different standards applicable, and that doesn't seem to be true. In other words, if this had been – the premise must be that if this had been – if he could have timely appealed it the first time, that the result would have been the same. I think the – the course of Lopez Velazquez's case is an example of – stands for the example that the two proceedings are different. In Lopez Velazquez, the court had previously upheld an immigration order against a direct challenge in the – well, a challenge in a reinstatement proceeding. And then in the Lopez Velazquez published decision, that was the criminal reentry prosecution. Well, one couldn't tell from the bank opinion whether the grounds were the same. You couldn't really tell what had happened in the earlier proceeding. Well, if you look at the unpublished decision in Lopez Velazquez in the – the reinstatement proceeding, which is available on Westlaw, they do talk about the same claim, the due process claim, that he raised in the criminal reentry prosecution. So it seems to be, even just looking at the two decisions, that it was the same claim that in the reinstatement proceeding the court rejected, and then yet when the criminal reentry prosecution came before the court, the court felt it had to address it anew because it was a different context, a different statute, different standard. But here – I mean, it seems to me significant, potentially, that the underlying due process violation here was a deprivation of right to counsel because that would arguably affect the whole process. That is, as a practical matter, his ability – the premise of the reinstatement, why one doesn't go behind the reinstatement, is that you had the full ability to litigate in the first instance, including to challenge any due process violation at the IJ stage. But if you didn't have a right to counsel, if you had what is essentially a complete deprivation of due process, then you arguably didn't have that right. So – or put another way, what about the gross miscarriage of justice? Exception that we have several times accepted. Why isn't that sufficiently parallel to the standard in the district court that the district court's determination should be relevant here? I have several responses to that. First, I think Morales-Izquierdo stands for the proposition that the removal order can be reinstated even if it's – no matter what the procedural violations were with the removal order. All the reinstatement does is put the alien back in the position that he was in before he illegally reentered. Unless his – but if that position was that he had no ability to contest the removal order in the first place, then our case law seems to say that he may have a right to do it at the point of the reinstatement. He had the ability, as Your Honor has pointed out, to file a motion to reopen. And as this Court has now made clear, he can do that from abroad. He might have timeliness issues, but he can argue that those shouldn't apply in his instance. So he had that remedy available to him. I guess what I'd like to know is, are the cases that use this gross miscarriage of justice standard? Okay. And I'll move to that issue. It's the same issue as far as I'm concerned. First, I – our position is that the gross miscarriage of justice standard no longer applies in this context. But before – since Your Honor is concerned about the gross miscarriage, I'll address that first. Paul, I'm trying to hear this in a second. If it doesn't exist, I don't have to worry about it. Okay. I'll address that first, then. I didn't want to seem like I was dodging your question. The order of reinstatement is governed by 1231A5. That says that when an order is reinstated, it's not subject to being reopened or reviewed. And that was the basis for Morales-Escuero's holding, that there was no collateral challenge to the rule of order. That's the second order, the one that is the basis of his currently being out of the country. The second order is the reinstatement. Yeah. Okay. So that's the one you're talking about in terms of 1231A5. Yeah. When that was reinstated, the statute, 1231A5, says the original order is not subject to being reviewed. This Court and other courts have suggested that 1252A2D, which recreates this Court's jurisdiction to review constitutional claims and questions of law in immigration proceedings where there are certain jurisdictional bars, that that operates here to allow review of the original removal order and specifically for a gross miscarriage of justice. That was the suggestion in Garcia de Rincon. And later cases. And later cases. I think the other ones were unpublished mostly. But not entirely. Not entirely. The reasoning of Garcia de Rincon, though, indicates that 1252A2D does not apply by its own terms where the jurisdictional bar at issue comes from within 1252 itself. In this case, the bar that is of interest is 1252B1, which says that there's no review of a removal order unless the alien timely files a petition for review in the Court of Appeals. And that's within 30 days. So in this case, in most reinstatement cases, any challenge that the alien seeks to bring in the context of the reinstatement is going to be too late as it applies to the original removal order. So in effect, because he didn't do that, you feel like he's lost his opportunity to appeal. Is there another aspect of it in that the constitutional argument was not raised below and therefore there's a failure to exhaust remedies? Is that a factor as well? That's another bar. Also in 1252 is the exhaustion requirement. I'm not going to stress that here because, as Your Honor has pointed out, his failure to exhaust was stemmed from his deprivation of the right to counsel, so it was not something we would stress here. But he still is. Can I ask you a question? I just have some. I always want to know what the practical impact of our rulings will be. My understanding of the record here is that he was present in a room full of recent apprehended illegal entrants at El Centro, and they were provided with a written list of counsel, and then the judge gave his admonishment as to rights, but he didn't take an individual acknowledgement from each of the aliens present that they were specifically waiving those rights. Is that the basis of the due process violation? That's basically correct. I don't know what the violations with the other individuals were. He wasn't an illegal entrant. He was there because of his criminal conviction, which was for voluntary manslaughter. But it was a room full of people that were about to be removed, basically, unless they chose to stand on their rights, remain in custody, go through the administrative appeal process. That's correct. One more question. I just toured the El Centro sector of the Border Patrol, and I learned that last year they apprehended and removed 30,000 aliens. So if we are to find that this is a gross miscarriage of justice, what impact is that going to have on thousands of these types of removal? They are still, my understanding, well, I'm not entirely sure. I think they're still conducting these group hearings, but they no longer do the group questioning where they ask someone, please stand if you want to get counsel. They will repeat the rights in a group presentation, and then they individually question each alien. And the reason, as I understand it, is that the two problems here were tied together, that if he had known that he was possibly eligible for relief, his determination as to counsel might have been otherwise. So that's the problem, if he had said to him, as he should have, you may be eligible for relief, now do you want a lawyer? That's a different question. At the time of his hearing in 1997, it was reasonable for the IJA to assume that he was not eligible for relief. That's because he had been convicted of an aggravated felony, i.e. voluntary manslaughter, which would have been considered a crime of violence at the time, and arguably still is a crime of violence. And at the time, 1997, which was after the passage of AEDPA, the Anti-Terrorism and Effective Death Penalty Act in 1996, all aliens convicted of aggravated felonies were no longer eligible for 212C relief. It was only later, in 2001, that the Supreme Court held that AEDPA could not be applied retroactively to aliens in Mr. Villa's position. But in 1997, it would have appeared that he was not eligible for 212C relief, and it was reasonable for the IJA to make that conclusion and to issue a deportation order. He was lawfully deported in 1997. When we go back to the gross miscarriage of justice issue, is your position about the various interactions of 1252A2 essentially that the Garcia case was wrong or not? In the Garcia de Vincone case, you made the comment about gross miscarriage of justice. It wasn't a comment. It went on for several pages. Go ahead. Well, in DICT, the discussion that gross miscarriage of justice could still be a claim that was brought against a reinstatement order was arguably DICTA in that case because in that case, the court went on to say – But I still want to ask my question, which is, is your position not that there is some quirk about this case, but that the Garcia de Vincone case, its discussion was wrong? Garcia de Vincone is correct. I believe I'm over time. That's fine. Go ahead. It was correct because Garcia de Vincone held that 1252A2D did not resurrect constitutional claims and questions of law where there was another jurisdictional bar in 1252. In that case, the jurisdictional bar was that applying to review of expedited review. That's not what I'm asking. Expedited orders of review. I'm asking you whether the several-page discussion, which said definitively and doesn't read advisory and hasn't been taken advisory in later opinions of this Court, that there is a – and other courts have held this too – that there is a class of cases in which there is a gross miscarriage of justice and therefore under 1254A2D can be reviewed in reinstatement. Are you saying that that was incorrect because of this analysis you gave us? Yes. Or you say there was something – there's some subset of cases in which it doesn't apply. It's incorrect. This is not an issue we addressed in our briefing because Mr. Villa had said he wasn't raising a collateral challenge. It's a very technical issue. I'm willing to submit a supplemental brief. The other cases in other circuits – It would require us to regard ourselves as not bound by Garcia de Vincone in later cases. I think it's dicta in Garcia de Vincone. Well, that's what you're saying. Obviously, there are lots of debates about what's – Yes, there are. Exactly. I have one other collateral question. Given the strange nature of this case, and as Judge Tallman mentions its possible impact on the many people who might have similar circumstances, I note in Punta Garcia that the Third Circuit remanded to the DHS in light of the court's, in quotes, serious concerns regarding the validity of an underlying removal order. What would the government's position be if we were to say, look, this is serious business. We really need you to take a careful look at this in the first instance. We're not going to decide this right now. We're going to send this to the DHS or perhaps somebody other than the DHS. That's what the Third Circuit did. What's your position as to whom we would send it, and number two, would that be a good idea so that it could be thoroughly considered by those, if you will, affected by this, and you have the opportunity for a petitioner here to have a voice in it as well before the matter is decided? You're talking about another option other than you validating it? Correct. This is another option. I understand your position, of course, is we don't even get there. It's done. But this is another option. What would your position be about taking this approach that the Third Circuit took in a slightly different situation? I'd have to look. I'm not sure what the Third Circuit's approach was. My understanding was that they just invalidated the order at issue and sent it back to the decision maker, but I'd have to look at that. What they indicated is serious concern concerning the validity of the underlying order. Because it does appear here that the ultimate removal was made without a second look after the district court's decision. Do you agree with that? Yes. And that's sort of peculiar. I'm not sure what the normal procedure is. Well, they had. That was before the district court expressed either, even if he didn't, although he didn't formally vacate it, he made a judicial decision that it was an invalid underlying removal. And you would have thought that the people who were deciding to reinstate this order might have wanted to think about that. But in fact, it seemed to have been done completely ministerially. And perhaps on a misunderstanding. Because it appears that whoever actually removed him thought he served time for this conviction, which obviously he didn't. My understanding is that this is, well, as you are probably aware, since this is the first case like this you've seen, it doesn't happen often like this. In many cases where the district court does dismiss the indictments, they go ahead and put the alien in regular removal proceedings and remove him because of unlawful presence. Wouldn't that be the most sensible thing to have done here? It might have been. It wouldn't have changed the result because he would not have been eligible for any relief in 240 in regular removal proceedings. He would have gotten a hearing on that. You're saying he wouldn't have been eligible if he had gotten a lawyer and they had litigated it? Maybe one, maybe one. But the problem is the nature of the underlying state conviction, right? The voluntary manslaughter with a seven-year prison sentence. Yeah. I mean, he's got this serious conviction. He wouldn't be eligible for 212C relief in new proceedings because he's no longer a lawful permanent resident. And he might have tried to adjust through his now U.S. citizen wife, and he would have needed a waiver for his voluntary manslaughter conviction. That's very difficult in cases involving serious violence like voluntary manslaughter. It's unlikely he would have gotten any relief. The result would not have been different. But in any event, nobody looked at that question. Nobody looked at the question of whether, considered the fact that the district judge had done what it did before he was removed. Right. That's true. But I turn the Court's attention back to its own decision in Morales-Escuero where the Court basically said that reinstatement, even of a procedurally defective removal order, does not violate due process because you're not changing the alien's position at all. You're just putting him back in the position he was before he illegally reentered. He has all the same rights and remedies he had back then. But you just told me that this case is an anomaly precisely because, although they could have done what they did, they ordinarily wouldn't have done what they did. That's true. But the fact is that Morales-Escuero does permit what they did in this case. And, again, he has the same rights and remedies he had before he illegally reentered. Morales-Escuero made clear that the Court doesn't approve of aliens using self-help by illegally reentering to get another way to challenge a removal order, even if that removal order was flawed. To respond to Judge Tallman's concern earlier, they're not conducting removal hearings this way anymore. We agree there's a due process violation in the hearing, that it violated Lopez-Vazquez and Ahumada to conduct them this way. They're not conducting them this way anymore. But you don't consider that to be a gross miscarriage of justice? I don't consider it to be a gross miscarriage of justice in this case because in 1997 it was reasonable for the IJ to conclude that he was not eligible for any relief because of his voluntary manslaughter conviction. All right. You are away with your time. Thank you. We'll give you three minutes or so. I think that about evens it out. I'm rather surprised to be hearing that he wasn't eligible for relief because that was not brought up on this appeal at all, except in my position. Well, I thought it wasn't a breeze. Not that it wasn't eligible, but that he would not have gotten it. Well, I don't think that's an issue in terms of getting under the case lights whether he was eligible for the relief, and he was eligible for the relief. And currently he has to show – maybe I'm mixing up immigration principles here. Doesn't he have to show that relief would have been plausible in order to establish a due process violation that would give him relief? He does not have to prove he would win or have a chance to win. And that was argued at the district court. But the problem is that the nature of his conviction is such a serious offense that it's not plausible, given the state of the law in 1997, that the immigration judge would have granted him. Well, I don't think that's the way that the immigration judge works. It would be, are you eligible for relief? Do you want an attorney? Do you want to apply for it? But he still has to show prejudice. I thought what the district court said was he didn't have to show prejudice because it was a deprivation of the right to counsel. Is that what the district court said? I'd have to look at that again. It would have been generally better had you managed to tell us what the district court had decided. Well, I could tell you. I know they stated it was a due process violation. And he was eligible for relief. And it was wrong for the judge to do the group hearing and not provide him with the opportunity to at least argue. By the way, what the government says is, well, it turns out that he's eligible for relief. But in 1997, the immigration judge had every reason to think he wasn't eligible for relief because state's year hadn't been decided. I don't believe the immigration judge even asked him about that. It was a group hearing. I don't believe he was even questioned about that. I don't even believe that the immigration judge understood that he was a resident. Are you suggesting the immigration judge didn't know that he was before him after being released from state prison on the voluntary manslaughter? The immigration judge would probably know that. But Mr. Veal was not questioned about it. It was a group hearing. There was no questions about, do you want to file for relief? Are you eligible for relief? You may be eligible for 212C. It was a group hearing. He had a United States citizen relative at that point, too, didn't he? He had a son and he had a U.S. citizen fiance. Those would have helped for adjustment of status. But I thought he had a parent, too. He has two resident parents that are now citizens. And one of them was a citizen at the time. It was presented at the district court that he was eligible for 212C and 212H. But at the time, in 1997, what if his parents wasn't a United States citizen? They weren't. They were residents. It would have to be an adjustment through his fiance. They are now married and have five children. Okay. Thank you very much. Thank you, both of you, for interesting arguments in an interesting case. The case of the Anguianos v. Holder is submitted.
judges: Berzon, Tallman, Smith